```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
PATSY MAHARAM,                        |
                                      |
              Plaintiff,              |
                                      |      04 CV 9569 (KMW)
      -against-                       |      MEMORANDUM OPINION
                                      |      AND ORDER
JAMES PATTERSON, MICHAEL GARLAND,     |
TIME WARNER, INC., TIME INC., TIME    |
WARNER BOOK GROUP INC., LITTLE,       |
BROWN AND COMPANY, LINN TANZMAN,      |
and SAKS INC.,                        |
                                      |
              Defendants.             |
--------------------------------------X
```
KIMBA M. WOOD, U.S.D.J.:

In this copyright action, Plaintiff Patsy Maharam ("Plaintiff") argues that Defendants James Patterson ("Patterson"), Michael Garland ("Garland"), Little Brown & Co., Saks Inc. ("Saks"), Linn Tanzman, and Time Warner, Inc., and its subsidiaries, Time Inc. and Time Warner Book Group, Inc., (collectively "Defendants"), infringed her copyright in "'Kid' Santa Claus," and its central character, Holly Nicole.  Plaintiff contends that Defendants' children's book "santaKid" and window displays based thereon "actually copy" and "unlawfully misappropriate" her work.[1]  Defendants move for

---

[1] The Court set forth the background of this case and engaged in a detailed analysis and comparison of "'Kid' Santa Claus" and "santaKid" in its January 2006 Order denying Defendants' motion for judgment on the pleadings and Plaintiff's motion for a preliminary injunction (the "January 2006 Order"). Familiarity with the January 2006 Order is assumed.
   The Fourth Affidavit of Elizabeth A. McNamara attaches as exhibits the deposition testimony of Patsy Maharam, James

1

summary judgment pursuant to Federal Rule of Civil Procedure 56(b).[2]  For the reasons stated below, Defendants' motion for summary judgment is granted.

To establish copyright infringement, Plaintiff must prove: (1) ownership of a valid copyright; and (2) unauthorized copying of constituent elements that are original.  E.g., Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003); Repp v. Webber, 132 F.3d 882, 889 (2d Cir. 1997).  Only the second element is in issue here.

"To satisfy the second element of an infringement claim -- the 'unauthorized copying' element -- a plaintiff must show both that his work was 'actually copied' and that the portion copied amounts to an 'improper or unlawful appropriation.'"  Jorgensen, 351 F.3d at 51 (citing Castle Rock Entm't, Inc. v. Carol Publ'g

---

Patterson, Michael Garland, Linn Tanzman, Andrea Spooner, Jennifer Walsh, and Mary Jordan and are referred to herein as "[X] Dep. [X]."  All exhibits attached to the Second Declaration of Michael Garland are referred to herein as "Second Garland Ex. [X]."  All exhibits attached to the Second Declaration of James Patterson are referred to as "Second Patterson Decl. Ex. [X]."  All exhibits attached to Patsy Maharam's Declaration are referred to as "Maharam Decl. Ex. [X]."  When the same document is included as an exhibit by both Plaintiff and Defendant, only one of those exhibits is cited.

[2] Defendants' motion for summary judgment was fully briefed on June 21, 2006.  On July 20, 2006, Plaintiff sent a letter to the Court purporting to "correct[] the record on which defendants' motion for summary judgment rests."  Letter from Andrew Berger to Court (July 26, 2006); Letter from Andrew Berger to Court (July 20, 2006).  This letter simply repeats the arguments that Plaintiff made in her opposition papers.

Group, Inc. et al., 150 F.3d 132, 137 (2d Cir. 1998)). "Actual copying may be established 'either by direct evidence of copying or by indirect evidence, including access to the copyrighted work, similarities that are probative of copying between the works, and expert testimony.'" Castle Rock Entm't, Inc., 150 F.3d at 137 (citing Laureyssens v. Idea Group, Inc., 964 F.2d 131, 140 (2d Cir. 1992)).  There is no infringement, however, if the evidence supports the conclusion that a defendant created his or her work independently.  E.g., Folio Impressions, Inc. v. Byer Calif., 937 F.2d 759, 765 (2d Cir. 1991); Cox v. Abrams, No. 93 Civ. 6899, 1997 WL 251532, at *7, 1997 U.S. Dist. LEXIS 6687, at *19-20 (S.D.N.Y. May 14, 1997).

The Court assumes, arguendo, that Plaintiff has made a prima facie case of infringement and turns to Defendants' evidence that Patterson created "santaKid" independent of Plaintiff's work.[3]

---

[3] The Court emphasizes that it assumes, arguendo, that Plaintiff has made a prima facie case.  Plaintiff has set forth an attenuated argument that Defendant might have encountered her work because it was widely disseminated.  To presume, however, that Defendants had access to Plaintiff's work because it was widely disseminated, Plaintiff must show that Defendants had a reasonable opportunity to hear or see the work, not simply a "bare possibility."  Jorgensen, 351 F.3d at 51.
  Here, Plaintiff has produced evidence that radio stations played her songs during the Christmas holiday season, which received attention in the print media, and that she appeared on a number of radio and television shows primarily during the 1980s to promote her work.  Maharam Decl. ¶¶ 41-106, 110.  During these appearances, she typically summarized the plot of "'Kid' Santa Claus" and sometimes read from her storybooks.  Maharam Decl. ¶¶ 54-62, 73, 81-83, 94, 96, 100-01, 105, 110, 111, 126-27.  Two hotels and a record store in New York City promoted her work,

"Even where a plaintiff is successful in creating a triable issue of fact with respect to actual copying, a defendant may defeat a copyright infringement claim by demonstrating independent creation of the allegedly infringing work."  Silberstein v. Fox Entm't Group, Inc., 424 F. Supp. 2d 616, 628 (S.D.N.Y. 2004). "Summary judgment is appropriate where a plaintiff fails to offer evidence sufficient to raise a factual question about a defendant's proof of independent creation."  Chivalry Film Prods.

---

Maharam Decl. ¶¶ 107-08, 128-35, and she performed her musical play at the Russian Tea Room in New York City (for which she received media attention), a Long Island school, and at the Plaza Hotel in New York City.  Maharam Decl. ¶¶ 112-21, 124, 125.  This dissemination is not as extensive as the broadcasting that has taken place in cases where courts have found a work to be widely disseminated.  E.g., Acuff-Rose Music, Inc. v. Jostens, Inc., 988 F. Supp. 289, 293 (S.D.N.Y. 1997), aff'd, 155 F.3d 140, 141 (2d Cir. 1998) (finding widespread dissemination where plaintiff's song had a "top five ranking as a country hit at the time" that defendant allegedly infringed plaintiff's copyright); ABKCO Music, Inc. v. Harrisongs Music, Ltd., 722 F.2d 988, 997-98 (2d Cir. 1983) (finding widespread dissemination where a song was "Number One on the Billboard Charts" for five weeks in the United States and one of the "Top Thirty Hits" for seven weeks in England); see also Silberstein, 424 F. Supp. at 627 (collecting cases).  Here, by contrast, Defendants created "santaKid" approximately 20 years after the bulk of Plaintiff's dissemination of her work.  Even if this evidence were sufficient to establish that Plaintiff's work was widely disseminated, Defendants have produced volumes of evidence to establish that Defendants were not exposed to it.  Cf. Three Boys Music Corp. v. Bolton, 212 F.3d 477, 483-84 (9th Cir. 2000) (finding sufficient evidence of access where defendant "confessed to being a huge fan" of plaintiffs and "a collector of their music").

4

v. NBC Universal, Inc., No. 05 Civ. 5627, 2006 WL 3780900, at *2, 2006 U.S. Dist. LEXIS 92956, at *9, (S.D.N.Y. Dec. 22, 2006).[4]

Here, Defendants have produced a vast amount of evidence, in the form of sworn testimony, and contemporaneous drafts, e-mails, letters, memos, and sketches,[5] to demonstrate that Patterson (the author) and Garland (the illustrator) created "santaKid" independent of any knowledge of Plaintiff's work. Specifically, Defendants have produced copies of Patterson's original handwritten manuscript and ten subsequent re-drafts, along with

---

[4] Courts in this district have taken differing positions regarding whether a district court may grant summary judgment on the basis of independent creation. Compare, e.g., Clonus Assocs. v. Dreamworks, LLC, 457 F. Supp. 2d 432, 441 (S.D.N.Y. 2006) ("No matter how credible [] a claim [of independent creation] is, and even absent any contrary evidence, a court should not grant summary judgment on that basis.") with, e.g., Chivalry Film Prods., No. 05 Civ. 5627, 2006 WL 3780900, at *2, 2006 U.S. Dist. LEXIS 92956, at *9; Silberstein, No. 02 Civ. 1131, 2004 WL 1620895, at *8, 2004 U.S. Dist. LEXIS 13554, at *27 (S.D.N.Y. July 19, 2004) ("Evidence of independent creation is an established ground for granting summary judgment."); Cox, No. 93 Civ. 6899, 1997 WL 251532, at *7, 1997 U.S. Dist. LEXIS 6687, at *19-20. See also, Langman Fabrics v. Graff Californiawear, Inc., 160 F.3d 106, 117 (2d Cir. 1998) (Jacobs, J., dissenting) ("The majority opinion (in my view) arrives at the wrong result, but it should not be read to raise the bar for granting summary judgment on the defense of independent prior creation.").

[5] The Court emphasizes that evidence from disinterested third parties supports Defendants' argument that they created "santaKid" independent of Plaintiff's work. This case is different from Repp v. Webber, 132 F.3d 882 (2d Cir. 1997), in which the Second Circuit reversed a district court's entry of summary judgment where "the district court accepted only the version of interested witnesses on the question of separate creation." Id. at 891; see also, Scholastic v. Speirs, 28 F. Supp. 2d 862, 869 (S.D.N.Y. 1998) aff'd, 199 F.3d 1323 (2d Cir. 1999).

correspondence between Patterson and his secretary, and between Patterson and his editors, which includes detailed editorial comments.[6]  Second Patterson Decl. Exs. A-E, H-X.  Defendants also produced Garland's initial black-and-white sketches and subsequent drafts, many of which contain editorial comments.  Second Garland Dec. ¶¶ 15-16, Exs. A-F.  Defendants corroborate the authenticity of these drafts with affidavits and declarations supporting that Defendants independently created and developed the "santaKid" story and its illustrations.  Second Patterson Decl. Ex. A-C; Jennifer Rudolph Walsh[7] Dep. 15:5-20 (stating that Patterson spoke with her about "an idea for a book about a little boy who was Santa's child . . . and this little boy basically has to save Christmas.";) Second Patterson Decl. Ex. O (attaching a letter from Andrea Spooner, Patterson's editor, which states: "The idea of a super-kid that saves Christmas from evil forces has wide and timeless appeal.  And, I honestly think it's the first time I've seen a story told from the point of view of Santa's own progeny -- a fantastic premise.").

---

[6] Patterson's secretary is not a party to this action.  Patterson's editors work for Defendant Little, Brown & Co.

[7] Jennifer Rudolph Walsh worked as Patterson's agent from about October 2002 through February 2005.  Walsh Dep. 8:9-18.  Neither Walsh nor her employer, the William Morris Agency ("William Morris"), represents Patterson.  Neither Walsh nor William Morris is a party to this lawsuit.

Plaintiff fails to offer evidence sufficient to raise a factual question about Defendants' proof of independent creation. Instead of rebutting Defendants' evidence, Plaintiff makes generalized assertions that Defendants' evidence is unconvincing and even falsified.  For example, Plaintiff uses Patterson's deposition testimony, in which he states that he cannot remember the precise date that he conceived of the "santaKid" story, to argue that Patterson must have infringed Plaintiff's work.  Pl.'s Mem. of Law in Opp'n to Defs.' Motion for Summ. J. 45 (stating that Defendants' documentation of independent creation is "pure fiction" because: (1) Patterson did not know when he conceived of the idea for "santaKid"; (2) Patterson has no documents indicating the date of conception; (3) Patterson offers no testimony from anyone who saw him write "santaKid"; (4) Patterson has no notes of his initial thoughts about "santaKid"; (5) Patterson "is a compulsive outliner" but has no outline for "santaKid" and is not sure if he created one; (6) Patterson never told his secretary that his son was the inspiration for "santaKid"; and (7) Patterson does not explain why he "allegedly" created two early drafts of "santaKid" in early 2003 with a male protagonist "when he agreed with his former agent in March 2002 that the central character should be a girl").  Plaintiff attempts to argue that Patterson could not have created "santaKid" independent of "'Kid' Santa Claus," because, although

it is Patterson's usual practice to use idea folders and outlines to write his novels, he has produced no idea folders or outlines for "santaKid." Pl.'s Mem. of Law in Opp'n to Defs.' Motion for Summ. J. 45 ("Although [Patterson] has 3,000 folders of ideas for new books, he never had a folder for santaKid.") She suggests, with no evidence to back the suggestion, that the correspondence and drafts that Patterson relies upon were created after Plaintiff filed this lawsuit to manufacture a defense. Pl.'s Mem. of Law in Opp'n to Defs.' Motion for Summ. J. 47 (stating only that Patterson had "a few initial drafts that seem suspiciously prepared for this litigation"). Plaintiff argues that Garland failed to demonstrate that he created his illustrations independent of Plaintiff's work because "[h]is declaration says nothing about how he was selected to create the illustrations, who selected him, when he was selected and what instructions he was given at the outset with respect to the illustrations he created." Pl.'s Mem. of Law in Opp'n to Defs.' Motion for Summ. J. 48. Because these generalized, speculative arguments fail to rebut Defendants' showing of independent creation, there is no genuine issue of material fact for trial. <u>Jorgensen</u>, 351 F.3d at 51 ("[Plaintiff] to avoid summary judgment, 'may not reply simply on conclusory allegations or speculation . . . but instead must offer evidence to show that

[her] version of the events is not wholly fanciful.'") (citing Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999)).

Thus, even assuming, arguendo, that Defendants had access to Plaintiff's work, they have defeated her copyright infringement claim by producing substantial, uncontradicted evidence that the "santaKid" works were created independent of her work.[8] The Court therefore grants Defendants' Motion for Summary Judgment [#73].

The Clerk of Court is directed to close this case. Any pending motions are moot.

```
        SO ORDERED.
Dated:  New York, New York
        September 14, 2007
```

                                    /s/ Kimba M. Wood
                                    Kimba M. Wood
                                    United States District Judge

---

[8] Because Saks's windows were a derivative work based upon Patterson and Garland's work in "santaKid," the Court's conclusion that Defendants created "santaKid" independent of Plaintiff's work necessarily resolves the issue as to Saks.