UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------X
PATSY MAHARAM,                        |
                                      |
                Plaintiff,            |
                                      |    04 CV 9569 (KMW)
        -against-                     |    OPINION AND ORDER
                                      |
JAMES PATTERSON, MICHAEL GARLAND,     |
TIME WARNER, INC., TIME INC., TIME    |
WARNER BOOK GROUP, INC., LITTLE,      |
BROWN AND COMPANY, LINN TANZMAN,      |
and SAKS INC.,                        |
                                      |
                Defendants.           |
--------------------------------------X
KIMBA M. WOOD, U.S.D.J.:

## I.   The Issue of Recusal

On March 11, 2008, I first became aware that at the date of

entry of final judgment in this matter, September 14, 2007, my

son owned stock in Time Warner Cable Inc. ("TWC"). I learned this

from copies of statements I received that day in preparation of

my annual Financial Disclosure Report;[1] the statements reflect

that my son owned 100 shares of TWC stock for three and one-half

months in 2007 (on August 1, 2007, 100 shares of TWC stock were

acquired for a cost of $3,711.57; on November 13, 2007, all 100

---

[1] I am required to disclose my son's financial information in my annual Financial Disclosure Report. The Ethics in Government Act of 1978, 5 U.S.C. app. §§ 101-111, requires that a judge disclose financial information concerning dependent children. 5 U.S.C. app. § 102(e)(1). The Act defines, in part, a "dependent child" as a "son . . . who is a dependent of the reporting person within the meaning of Section 152 of the Internal Revenue Code of 1986." 5 U.S.C. app. § 109(2)(B). In turn, the definition of a dependent under 26 U.S.C. § 152 extends to "a student who has not attained the age of 24." 26 U.S.C. § 152(c)(3)(ii). Given my son's status as a student, I am required to disclose his financial information after his twenty-first birthday. In contrast, the relevant provisions of the statute governing disqualification refer only to a judge's child before he or she reaches the age of twenty-one. See 28 U.S.C. § 455.

1

shares of TWC stock were sold at a loss). My son was twenty-one years old throughout the period that he owned TWC stock.

Based on these facts, the Court sua sponte considers the issue of recusal. See In re Drexel Burnham Lambert, Inc., 861 F.2d 1307, 1312 (2d Cir. 1988) ("Discretion is confided in the district judge in the first instance to determine whether to disqualify [her]self."). For the reasons stated below, the Court finds that recusal is not warranted.

**A.    28 U.S.C § 455(b)(4)**

The Court finds that recusal is not warranted under 28 U.S.C. § 455(b)(4). Under this provision, a judge must recuse herself if "[s]he knows that [s]he, individually or as a fiduciary, or [her] spouse or minor child residing in [her] household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."

Assuming arquendo that my son's ownership of TWC stock constitutes such a "financial interest,"[2] recusal is not warranted under § 455(b)(4). First, my son was not a "minor child" throughout the three and one-half months that he owned TWC

---

[2] 28 U.S.C. § 455(d)(4) defines "financial interest," in part, as "ownership of a legal or equitable interest, however small." The ownership of stock thus constitutes a "financial interest." Although TWC is not a party to this proceeding, TWC is a consolidated subsidiary of Defendant Time Warner, Inc. Therefore, the Court treats my son's ownership of TWC stock as a "financial interest" under 28 U.S.C. § 455(b)(4).

stock. See Sears, Roebuck & Co. v. Automotive Controls Corp., No. 93 Civ. 3634, 1994 U.S. Dist. LEXIS 749, at *2 (N.D. Ill. Jan. 28, 1994) (quoting Sperling v. Comm'r, 726 F.2d 948, 951 n.6 (2d Cir. 1984)). Second, I did not have actual knowledge of his ownership of TWC stock until March 11, 2008. See Chase Manhattan Bank v. Affiliated FM Ins. Co., 343 F.3d 120, 127 (2d Cir. 2003) (holding that "Section 455(b)(4) embodies an actual knowledge test").

Accordingly, the Court finds that recusal is not warranted under 28 U.S.C. § 455(b)(4).

## B.    28 U.S.C. § 455(a)

The Court finds that recusal is not warranted under 28 U.S.C. § 455(a). Under this provision, a judge "shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned."

§ 455(b) and § 455(a) "focus on different types of conflicts requiring recusal. Section 455(b) focuses on interests and situations [that present conflicts of interest], while 'the goal of section 455(a) is to avoid even the appearance of partiality.'" In re Certain Underwriter Defendants, 294 F.3d 297, 306 (2d Cir. 2002) (quoting Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 860 (1988)). As stated above, a violation of § 455(b)(4) requires actual knowledge of the disqualifying interest. In contrast, "[s]cienter is not an element of a violation of § 455(a)." Liljeberg, 486 U.S. at 859. The Court must instead apply "Section 455(a)'s objective

reasonable person test." <u>Chase Manhattan Bank</u>, 343 F.3d at 130.
Specifically, recusal is warranted under § 455(a) when "(i) a
reasonable person knowing all the facts, would conclude that the
judge had a disqualifying interest in a party under Section
455(b)(4), and (ii) such a person would also conclude that the
judge knew of that interest and yet heard the case." <u>Id.</u> at 128.
Under the reasonable person standard, the Court finds that
recusal is not warranted.

#### i.    Not a Minor Child

Pursuant to the plain language of the statute, § 455(b)(4)
applies only to financial interests held by the judge, the
judge's spouse, and the judge's minor children residing in the
household. 28 U.S.C. § 455(b)(4). As stated above, my son was not
a minor child throughout the period of his ownership of TWC
stock. Thus, no reasonable person would conclude that I had a
disqualifying interest in a party under Section 455(b)(4).

#### ii.   No Appearance of Knowledge

Assuming <u>arguendo</u> that a reasonable person would conclude
that I had a disqualifying interest based on my son's ownership
of TWC stock, no reasonable person would conclude that I knew of
this disqualifying interest.

As stated above, a violation of § 455(a) does not require
the judge's actual knowledge of the disqualifying interest.
However, a violation of § 455(a) does require that a reasonable
person would conclude that the judge had knowledge of the

4

disqualifying interest. An evaluation of recusal under § 455(a)

thus requires the identification of "facts that might reasonably

cause an objective observer to question [the judge's]

impartiality."[3] Liljeberg, 486 U.S. at 865. There are no such

---

[3]By way of example, the Court describes in detail two sets of
facts that supported violations of § 455(a).

In Liljeberg, the plaintiff sought to purchase land owned by
Loyola University on which to build a hospital. The district judge
presided over the trial of an issue critical to the land purchase and
also served as a member of the Board of Trustees of Loyola University.
The Supreme Court identified four facts that supported a violation of
§ 455(a). "First, it [was] remarkable that the judge, who regularly
attended the meetings of the Board of Trustees . . . , completely
forgot about the University's interest in having a hospital
constructed on its property." Second, the judge did not attend a board
meeting, held shortly after the trial on the critical issue, at which
the board discussed the progress of the trial and decided not to call
the judge's attention to "the obvious conflict of interest that
resulted from having a University trustee preside over that trial."
Third, the judge failed to recuse himself after reading the minutes of
that meeting. Fourth, the judge later denied a motion to vacate and
"did not acknowledge that he had known about the University's interest
both shortly before and shortly after the trial." Liljeberg, 486 U.S.
at 866-67. The Supreme Court found that "[a]lthough [the judge] did
not know of his fiduciary interest, he certainly should have known."
486 U.S. at 867-68.

In Chase Manhattan Bank, the district judge, his wife, and a
family trust owned between $250,000 and $300,000 of stock in Chase
Manhattan Bank. In 1997, the judge awarded $92 million to defendant
Chemical Bank and other defendant banks. On remand in 2000, the judge
first became aware that prior to the 1997 ruling, defendant Chemical
Bank merged with Chase Manhattan Bank. The Second Circuit Court of
Appeals found that a reasonable person "would conclude that the
district judge knew of his disqualifying interest in Chase/Chemical at
the time of his 1997 decision," 343 F.3d at 130, because of the
following facts:

> The merger was highly publicized, papers filed by the
> parties mentioned it, the judge met with a senior Chase
> official in settlement discussions, the Chase official sent
> correspondence to the judge on the Chase letterhead, and
> trial witnesses who were then employees of Chase explained
> the merger. Most significantly, the opinion of the judge
> containing his findings of fact referred to Chase as a party
> (as did [the Second Circuit's] opinion on appeal).

Id. at 123 (internal citations omitted). The Second Circuit held that
"under the present facts the district judge's stated ignorance of the
merger cannot overcome the objective appearance of a conflict of

facts in this case. I did not learn of my son's ownership of TWC stock until March 11, 2008.[4] My son's paternal grandmother provided the investment funds, the investment of which was directed by an investment advisor unknown to me, who was chosen in 2007 on the advice of my son's father (from whom I have been divorced for over ten years). The TWC stock was acquired (and divested) by my son without my knowledge. I was not involved in any way in my son's ownership of TWC stock. Thus, there are no facts by which a reasonable person would conclude that I had knowledge of my son's ownership of TWC stock.

Accordingly, the Court finds that recusal is not warranted under 28 U.S.C. § 455(a).

## C. 28 U.S.C. § 455(f)

Assuming <u>arquendo</u> that recusal were warranted under § 455(b)(4) or § 455(a), § 455(f) cures any disqualifying interest presented by my son's ownership of TWC stock. Under this provision, if a judge

> to whom a matter has been assigned would be
> disqualified, after substantial judicial time has been
> devoted to the matter, because of the appearance or
> discovery, after the matter was assigned to him or her,
> that he or she individually or as a fiduciary, or his

---

interest requiring disqualification under Section 455(a)." <u>Id.</u> at 130.

[4]28 U.S.C. § 455(c) requires a judge to "inform [her]self about [her] personal and fiduciary financial interests, and make a reasonable effort to inform [her]self about the personal financial interests of [her] spouse and minor children residing in [her] household." My son reached the age of majority before the period of his ownership of TWC stock. Therefore, at the time he acquired the TWC stock, I was no longer statutorily required to make a reasonable effort to inform myself about his personal financial interests.

or her spouse or minor child residing in his or her
household, has a financial interest in a party (other
than an interest that could be substantially affected
by the outcome), disqualification is not required if
the . . . judge . . . , spouse, or minor child, as the
case may be, divests himself or herself of the interest
that provides the grounds for the disqualification.

28 U.S.C. § 455(f). In evaluating the applicability of § 455(f),
the Court considers "(1) the devotion of substantial time to a
case; (2) the discovery of a financial interest in a party; (3)
[whether] the interest is one that could not be substantially
affected by the outcome; and (4) divestment of the financial
interest in question." Key Pharm., Inc. v. Mylan Labs. Inc., 24
F. Supp. 2d 480, 482 (W.D. Pa. 1998).

First, the Court has devoted substantial judicial time to
this case. "[M]easuring 'substantial judicial time' means
examining the time and effort a district court invests in a
matter." In re Certain Underwriter Defendants, 294 F.3d at 305.
The Court has invested substantial time and effort in this case,
which was filed over three years ago. After reviewing exhaustive
submissions, the Court ruled on a motion for a preliminary
injunction and a motion for summary judgment. In addition, the
Court notes that the parties have also devoted substantial time
and effort to this matter.

Second, assuming arguendo that my son's ownership of TWC
stock constitutes a "financial interest in a party,"[5] I did not

---

[5]See supra note 1 (finding that TWC is a subsidiary of Defendant
Time Warner, Inc.); section I(A) (finding that my son was not a minor
child throughout the period of his ownership of TWC stock); and
section I(B)(i) (same).

7

learn of this financial interest until March 11, 2008. On that date, I received from my former spouse statements of my son's investments throughout calendar year 2007 in order to prepare my annual Financial Disclosure Report.

Third, my son's ownership of TWC stock was not "an interest that could be substantially affected by the outcome" of this case. 28 U.S.C. § 455(f). Defendant Time Warner, Inc. is a large, publicly held corporation with diverse interests and revenues in the billions. There is no reason to believe that whatever the outcome of this case, my son's financial interest in the TWC subsidiary corporation would have been substantially affected, or affected at all. See Key Pharm., Inc., 24 F. Supp. 2d at 483. TWC did not list this action in the Legal Proceedings section of its 2007 Annual Report. Time Warner Cable Inc., Annual Report (Form 10-K), at 37-39 (Dec. 31, 2007). Furthermore, this litigation does not appear to have had any effect on the trading value of TWC's stock, the value of which decreased during the period of my son's ownership in spite of the entry of final judgment in favor of Defendants.

Fourth, the TWC stock was divested on November 13, 2007. The Court emphasizes that the divestiture occurred months before I knew that my son had acquired TWC stock. This chronology weighs heavily in favor of the curative application of § 455(f).

After finding that all of the elements of § 455(f) have been satisfied, the Court holds that recusal is not warranted pursuant to this provision. The Court is mindful of the Second Circuit's

warning "that divestiture cannot cure circumstances in which
recusal was required years before and important decisions have
been rendered in the interim." Chase Manhattan Bank, 343 F.3d at
131-32 (holding that "[b]ecause the disqualifying circumstances
here appeared in 1997, they cannot be cured by a divestiture in
2000, long after the district judge's conduct of the bench trial,
findings of fact, and issuance of judgment"). Although this Court
entered final judgment during the period of my son's ownership of
TWC stock, the divestiture occurred less than two months later.
The Court thus holds that pursuant to § 455(f), the divestiture
of my son's TWC stock cured any disqualifying interest. See
Kidder, Peabody & Co., Inc. v. Maxus Energy Corp., 925 F.2d 556,
560-61 (2d Cir. 1991) (holding that shortly after the entry of
final judgment, the "forthright divestiture of stock [held by the
district judge and his wife] eliminated the need for
disqualification, since the requirements of § 455(f) were
fulfilled"). The Court again notes that my son's TWC stock was
divested before I discovered that it had been acquired.

Accordingly, the Court finds that recusal is not warranted
pursuant to 28 U.S.C. § 455(f).

### D.   Submissions and Conference

After consideration of the relevant provisions of 28 U.S.C.
§ 455, the Court finds that recusal is not warranted based on my
son's ownership of TWC stock. The Court notes that "where the
standards governing disqualification have not been met,

9

disqualification is not optional; rather, it is prohibited." <u>In re Aguinda</u>, 241 F.3d 194, 201 (2d Cir. 2001).

However, the Court will give the parties an opportunity to present submissions and to be heard on this issue. No later than 5:00 P.M. on Friday, April 18, 2008, the parties must file any submissions related to the issue of recusal. The Court hereby schedules a conference related to this issue for Friday, April 25, 2008 at 10:00 A.M., at Courtroom 15B, United States Courthouse, 500 Pearl Street, New York, New York.

## II.  Plaintiff's March 14, 2008 Submission

In light of the above discussion, the Court stays until after the April 25, 2008 conference any further deadlines and proceedings regarding the completion of the record. However, the Court offers the following responses to the concerns raised in Plaintiff's March 14, 2008 submission.

In her March 14, 2008 submission, Plaintiff sought (1) full implementation of the Court's January 25, 2008 Order regarding the unsealing and inclusion of certain materials in the record; (2) to include in the record, not under seal, an audio "CD containing 'Kid Santa' appearances on WNYE-FM radio" that was attached to Plaintiff's February 8, 2008 submission; and (3) "guidance on how to, and where to, deliver" a submission that she prepared in response to the Court's February 26, 2008 Order.

**A.    Implementation of the Court's January 25, 2008 Order**

After her review of the record located at the Second Circuit
Court of Appeals, Plaintiff advised the Court that contrary to an
earlier order, certain documents had not been unsealed.
Plaintiff's advisement put the Court on notice that the Clerk's
Office of the United States District Court for the Southern
District of New York failed to implement the Court's January 25,
2008 Order. The Court has since learned that after it signed the
January 25, 2008 Order, the Order was, properly, sent to the
Docketing unit and entered as Docket Entry 118. However, it
appears that the Docketing unit mistakenly failed to send copies
of the January 25, 2008 Order to the Sealed Records unit and the
Appeals unit.[6] Therefore, certain documents have not been
unsealed and other documents have not been forwarded to the
Second Circuit Court of Appeals.

The Court's law clerk has brought this mistake to the
attention of the Clerk's Office, which has stated that it will
promptly comply with the January 25, 2008 Order. The Sealed
Records unit will unseal Docket Entries 44, 71 (with the
exceptions listed in the January 25, 2008 Order), 72, and 87. The
Appeals unit will prepare a Supplemental Index to the Record on
Appeal for Docket Entries 105-153. (See Docket Entry 104 (Index

---

[6]On March 18, 2008, the Court's law clerk communicated with the
Sealed Records unit and the Appeals unit. Members of both units
explained that they never received a copy of the Court's January 25,
2008 Order.

to the Record on Appeal for Docket Entries 1-104).) The Appeals

unit will then forward these materials, which are currently in

the Closed Records unit, to the Second Circuit Court of Appeals.

The Court notes that the record located at the Second

Circuit Court of Appeals may not include hard copies of documents

that are accessible electronically through the Case

Management/Electronic Case Filing system.

### B.    The Audio CD

Per the Court's February 26, 2008 Order, Defendants were

given until 5:00 P.M. on March 28, 2008 to "submit to Plaintiff

and the Court . . . any objections to the inclusion in the

record, not under seal, of the audio CD of 'Kid Santa'

performances on WNYE-FM (Bank Street) Radio, which Plaintiff

attached to her February 8, 2008 letter." As stated in the

February 26, 2008 Order, the Court will not include this CD in

the record until it has had an opportunity to consider any

objections by Defendants and any response to those objections by

Plaintiff. The Court awaits Defendants' objections to the

inclusion of the CD.[7]

### C.    Compliance with the Court's February 26, 2008 Order

Per the Court's February 26, 2008 Order, Plaintiff was given

---

[7]The Court notes that pursuant to the February 26, 2008 Order,
Defendants were given until March 28, 2008 to submit objections to the
inclusion of the CD. This deadline has not yet passed. The Court
further notes that this Order continues Defendants' submission
deadline sine die.

until 5:00 P.M. on March 14, 2008 to "submit to Defendants' counsel and the Court copies of (1) the expert's 'illustrative comparison report' if she is able to locate it; (2) the original 'Kid Santa' storybook with accompanying press recordings and press sheets if she is able to locate them; and (3) a list and copies of any additional materials that Plaintiff claims were once in the record, but are now physically missing from the record." The Court presumes that the "affidavit and accompanying evidence" Plaintiff referenced in her March 14, 2008 submission are responsive to the Court's directive. Plaintiff now seeks guidance "on how to, and where to, deliver these materials."

As explained in the February 26, 2008 Order, Plaintiff must submit these materials to Defendant's counsel and the Court. If Plaintiff was unsure how to do so, then she should have contacted the Pro Se Office or the Court in advance of the submission deadline.

In the event that this Court declines to recuse itself following the April 25, 2008 conference, the Court will establish a revised schedule of submission deadlines. Plaintiff should bring two copies of her "affidavit and accompanying evidence" to the April 25, 2008 conference. If the Court continues to preside over completing the record, Plaintiff can deliver one copy of these materials to defense counsel and one copy to the Court at the conclusion of the conference. Defendants would then have until May 9, 2008 to respond to Plaintiff's "affidavit and

accompanying evidence." Plaintiff would then have until May 23, 2008 to reply to Defendants' responses.

        SO ORDERED.

Dated:     New York, New York
           March 24, 2008

                                        Kimba M. Wood
                              United States District Judge