```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
PATSY MAHARAM,                      |
                                    |
            Plaintiff,              |
                                    |     04 CV 9569 (KMW)
      -against-                     |     OPINION AND ORDER
                                    |
JAMES PATTERSON, MICHAEL GARLAND,   |
TIME WARNER, INC., TIME INC., TIME  |
WARNER BOOK GROUP, INC., LITTLE,    |
BROWN AND COMPANY, LINN TANZMAN,    |
and SAKS INC.,                      |
                                    |
            Defendants.             |
------------------------------------X
```

KIMBA M. WOOD, U.S.D.J.:

This Order responds to the arguments raised in Plaintiff's April 18, 2008 submission regarding the issue of recusal.

## I. Arguments Addressed in Previous Court Orders

The Court addressed several of the arguments raised in Plaintiff's April 18, 2008 submission in previous Court Orders. The Court's March 24, 2008 Order fully addressed the applicability of 28 U.S.C. §§ 455(c) and 455(f).[1] (Mar. 24, 2008 Order 6 n.4, 6-9, D.E. 165.) The Court's December 11, 2007 Order

---

[1] In relation to her argument that 28 U.S.C. § 455(f) does not apply, Plaintiff argues that the Court violated Canon 3(A)(5) of the Code of Conduct for United States Judges. (Pl.'s Apr. 18, 2008 Ltr. 4-5.) Canon 3(A)(5) states that "[a] judge should dispose promptly of the business of the court." Plaintiff alleges that the Court afforded "opposing counsel every opportunity for dilatory tactics." (Id. at 5.) To support this allegation, Plaintiff claims that the Court (1) allowed Defendants, who "admitted tracing and access" to "later . . . shift gears to 'independent creation,'" (2) allowed Defendants to "abuse the amount of time - over the Federal rules - given to take Plaintiff's deposition," (3) denied Plaintiff an opportunity to "continue a brief deposition of Jennifer Rudolph Walsh" after new information came to light, and (4) delayed approximately nine months before entering final judgment in this matter. (Id.) These four claims do not demonstrate any unnecessary delay in the disposition of this case. Therefore, even assuming arguendo the truth of these four claims, Plaintiff fails to establish a violation of Canon 3(A)(5).

1

addressed the Court's disposal of Chambers copies of materials related to this case following the closure of this case. (Dec. 11, 2007 Order 4, D.E. 107.) The Court adds that it has since then invested significant resources in ensuring the completeness of the record that will be available to the Court of Appeals.

**II. Arguments Without Merit**

The Court finds that the remaining arguments raised in Plaintiff's April 18, 2008 submission are without merit and do not warrant a detailed analysis. However, the Court provides a concise analysis of these arguments for the ease of the Court of Appeals in reviewing the Court's decision that recusal is not warranted.

**A. April 1, 2008 Telephone Conversation**

Plaintiff argues that it was inappropriate for the Court to conduct "an ex parte phone call to opposing counsel where plaintiff was not notified or privy to this one-sided conversation." (Pl.'s Apr. 18, 2008 Ltr. 1 n.1.) The Court notes that it was the undersigned's law clerk who made the call, and that it was made only to confirm that Defendants had no objection to Plaintiff's request to include in the record "Mr. Barry's colorful illustrative report." Plaintiff argues that this phone call was made despite the Court's March 24, 2008 Order staying the proceedings regarding the completion of the record. (Id. ¶ 44.)

The history of this minor matter is as follows. In her

2

February 8, 2008 submission, Plaintiff requested that Defendants produce "Mr. Barry's colorful illustrative report" for inclusion in the record. (Pl.'s Feb. 8, 2008 Ltr. 2, D.E. 152.) On March 28, 2008, Defendants attached that document to a submission, but failed to explicitly state that they had no objection to the inclusion of this document in the record. (Apr. 1, 2008 Order, D.E. 166.) On April 1, 2008, the Court's law clerk contacted Defendants' counsel by telephone to confirm that Defendants had no objection to the inclusion of this document in the record. The Court then ordered the inclusion of this document in the record. (Id.) The April 1, 2008 phone call was made without Plaintiff's participation because (1) the conversation was between the undersigned's law clerk and Defendants' counsel, and the purpose of the call was to act on Plaintiff's request that this document be included in the record, and (2) the conversation did not address the merits of the pending motion. Accordingly, the Court acted appropriately regarding the April 1, 2008 telephone conversation and Plaintiff's argument is without merit.

**B.   28 U.S.C § 455(b)(5)(iii)**

Plaintiff argues that recusal is warranted under 28 U.S.C. § 455(b)(5)(iii). (Pl.'s Apr. 18, 2008 Ltr. 3.) Under this provision, a judge must recuse herself where the judge, the judge's spouse, "or a person within the third degree of relationship to either of them . . . is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." My son obviously falls within the

3

third degree of relationship to me.  However, recusal is not warranted under this provision for two reasons.

First, as set forth in the Court's March 24, 2008 Order, I did not have actual knowledge of my son's ownership of Time Warner Cable Inc. ("TWC") stock until March 11, 2008.  (Mar. 24, 2008 Order 1, 3, 6; D.E. 165.)  The plain language of 28 U.S.C. § 455(b)(5)(iii) requires <u>actual</u> knowledge. Second, as set forth in the Court's March 24, 2008 Order, "[t]here is no reason to believe that whatever the outcome of this case, my son's financial interest in the TWC subsidiary corporation would have been substantially affected, or affected at all."  (<u>Id.</u> at 8.)  Accordingly, the Court finds that recusal is not warranted under 28 U.S.C. § 455(b)(5)(iii) and Plaintiff's argument is without merit.

**C.   The Timing of the Divestment**

Plaintiff argues that the timing of my son's divestment indicates "a transaction where Judge Wood and/or Judge Wood's son and/or ex-husband had knowledge that plaintiff was continuing to pursue the case, and therefore, divesting of the Time Warner Cable stock became imminent."  (Pl.'s Apr. 18, 2008 Ltr. 6.)  Essentially, Plaintiff argues that my son's divestment was driven by her appeal and her Motion to Correct the Docket/Record.  On October 25, 2007, Plaintiff filed her Notice of Appeal.  On November 5, 2007, Plaintiff filed her Motion to Correct the Docket/Record.  On November 13, 2007, my son's investment advisor, without my knowledge, sold my son's TWC stock.  As set

4

forth in the Court's March 24, 2008 Order, my son's divestment occurred without my knowledge, and my son's financial interest (which, at its maximum market value was worth $3,670.00) could not be substantially affected by the outcome of this case. (Mar. 24, 2008 Order 6, 8.) Accordingly, Plaintiff's argument is without merit.

**D. The Earlier Decision that Recusal was not Warranted**

Plaintiff argues that the Court's 2005 decision that recusal was not warranted was flawed. First, Plaintiff argues that the Court relied on "deceptive" affidavits filed by Susan Waxenberg, Carol Fein Ross, and Elizabeth McNamara.[2] (Pl.'s Apr. 18, 2008 Ltr. 6 n.3.) Specifically, Plaintiff argues that a study by Harvard Professor John A. Deighton stating that "'big-box' retailers (such as Wal-Mart) . . . are 'responsible for 34 percent of book sales in the United States,'" contradicts that "Time Warner and James Patterson sales at Wal-Mart were 'infinitesimal' or a 'drop in the bucket'" as asserted in the

---

[2] Ms. Waxenberg, an Assistant Secretary of Time Warner Inc., averred that "Wal-Mart Stores, Inc. is not listed . . . as a registered owner of Time Warner Inc. Common Stock" and "Time Warner Inc. does not own a significant number of shares of Wal-Mart Stores, Inc. stock." (D.E. 155.) Ms. Fein Ross, General Counsel of Time Warner Book Group Inc. ("TWBG"), averred that (1) Wal-Mart "does not purchase any books directly from TWBG," (2) "Wal-Mart sold approximately 12,000 copies of the book *santaKid* by James Patterson," and (3) "[i]n relation to the magnitude of Wal-Mart's net sales . . . I estimate that sales of books published by TWBG, including *santaKid*, account for a minute and infinitesimal fraction of Wal-Mart's sales." Ms. McNamara, Defendants' counsel, averred that the public SEC filings of Wal-Mart Stores, Inc. and Time Warner Inc. do not reveal (1) "any significant legal or equitable ownership interest" of one company in the other, or (2) any material agreements of "significant partnership or joint venture relationships" between the two companies. (D.E. 42.)

5

affidavits. (Id.) However, Professor Deighton's statement does not contradict the affidavits. Indeed, such a broad statement does not comment on (1) the specific relationship between Defendants and Wal-Mart Stores, Inc., (2) the impact of sales of Defendants' books on Wal-Mart's overall revenues, or (3) the impact of sales of Defendants' books by Wal-Mart Stores, Inc. on Defendants' overall revenues.

Second, Plaintiff argues that I failed to disclose that Defendant Patterson and I were neighbors on two separate occasions. (Pl.'s Apr. 18, 2008 Ltr. 8.) Assuming arguendo the truth of Plaintiff's underlying allegation, the Court has previously decided that my status as Defendant Patterson's neighbor does not warrant recusal. (Feb. 9, 2005 Hr'g Tr. 2-3, D.E. 8; June 29, 2005 Order, D.E. 46.)

Accordingly, Plaintiff's argument is without merit.

### E. The Sale of Little, Brown and Company and TWBG

Plaintiff argues that the Court cannot rely on Defendants' statement that "Time Warner Inc. and Time Inc. sold 100% of Time Warner Book Group to Hachette Livre USA on March 31, 2006" (Apr. 1, 2008 Order 1), because Defendants' counsel admitted that "Defendants Time Warner Inc., Time Inc., and Time Warner Book Group Inc. are corporate affiliates of Little, Brown" (Defs.' 56.1 Stmt. ¶ 4, D.E. 75). (Pl.'s Apr. 18, 2008 Ltr. 6.)

The Court did not rely on the March 31, 2006 sale of Little, Brown and Company and TWBG in its March 24, 2008 Order finding that recusal is not warranted. Therefore, Plaintiff's argument

6

is without merit.[3]

**F. Plaintiff's Alleged Failure to Receive Court Orders**

The Court finds that Plaintiff is in no way prejudiced by her alleged failure to receive the Court Orders specified in her April 18, 2008 submission. (See Pl.'s Apr. 18, 2008 Ltr. ¶ 44, 11 n.4.) Plaintiff alleges that she did not receive Court Orders dated April 1, 2008; February 14, 2008; September 27, 2007; and September 14, 2007. (Id.) The Court finds that Plaintiff's alleged failure to receive the April 1, 2008 Order (D.E. 166), which merely granted Plaintiff's request to include in the record (1) an audio CD of "'Kid Santa' performances on WNYE-FM (Bank Street) Radio" and (2) "Rick Barry's colorful illustrative comparison report," did not prejudice Plaintiff. The Court further finds that Plaintiff's alleged failure to receive the February 14, 2008 Order (D.E. 150), which merely extended Defendants' submission deadline until further Court Order because Plaintiff requested an extension of time to review the record in her February 8, 2008 letter, did not prejudice Plaintiff. As set forth in the Court's December 11, 2007 Order, the Court has already decided that Plaintiff's alleged failure to receive the

---

[3]The Court notes that despite the apparent inconsistency, public SEC filings of Defendant Time Warner Inc. establish that TWBG was sold to Hachette Livre USA on March 31, 2006. Time Warner Inc., Annual Report (Form 10-K), at 81 (Feb. 23, 2007). Defendants Time Warner Inc. and Time Inc. were named as Defendants in this case because of their legal status as the parent corporations of Defendants TWBG and Little, Brown and Company. Therefore, the sale of Defendants TWBG and Little, Brown and Company prior to my son's ownership of TWC stock further supports the finding that recusal is not warranted.

7

September 27, 2007 Order (D.E. 101), which granted Defendants' request for an extension of time to file a motion for attorneys' fees, and the September 14, 2007 Order (D.E. 99), which granted summary judgment to Defendants, did not prejudice Plaintiff. (fully addressed in Dec. 11, 2007 Order 9-11, D.E. 107.) Accordingly, the Court finds that Plaintiff is in no way prejudiced by her alleged failure to receive these four Court Orders and Plaintiff's argument is thus without merit.

However, because Plaintiff alleges that she failed to receive the Court's Orders dated April 1, 2008 and February 14, 2008, notwithstanding that the undersigned's secretary mailed copies of both Orders to P.O. Box 1628, New York, NY 10101, the address provided by Plaintiff, the Court takes the precaution of hereby ordering that within twenty-four hours of receiving any further Order of this Court, Defendants' counsel must contact Plaintiff by telephone, and by mail with a copy to the Court, to confirm that Plaintiff also received the Court Order. If Plaintiff did not receive the Court Order, Plaintiff must call the Courtroom Deputy, Sara LaJoie, at 212-805-0258, within five days of receiving such a call or letter from Defendants' counsel to advise the Court that she did not receive the Order.

**G. The Court's Alleged Failure to Respond**

Plaintiff argues that the Court failed to respond to the concerns raised in her March 14, 2008 letter. (Pl.'s Apr. 18, 2008 Ltr. ¶ 50.) Plaintiff further argues that she "followed up with another letter to the Court dated March 24, 2008 to repeat

her concerns." (Id.)

After I became aware of my son's ownership of TWC stock on March 11, 2008, the Court sua sponte considered the issue of recusal. See In re Drexel Burnham Lambert, Inc., 861 F.2d 1307, 1312 (2d Cir. 1988) ("Discretion is confided in the district judge in the first instance to determine whether to disqualify [her]self."). Pending the Court's final determination on the issue of recusal, the Court has not addressed contentious matters related to the issue of completing the record. However, the Court's March 24, 2008 Order fully addressed the concerns raised in Plaintiff's March 14, 2008 letter. (Mar. 24, 2008 Order 10-14.) Therefore, Plaintiff's argument is without merit.

**H. My Attendance at a Book Party**

Plaintiff argues that recusal is warranted because I attended "an exclusive 'Lipstick Jungle' book party for Candace Bushnell in May 2005." (Pl.'s Apr. 18, 2008 Ltr. ¶ 25.) Specifically, Plaintiff argues that (1) my attendance at the book party was endorsement of "Lipstick Jungle" in violation of Canon 7(A)(2) of the Code of Conduct for United States Judges, (2) my alleged acceptance of a gift of skin cream at the book party was a violation of Canon 5(C)(4), and (3) I prefer "to participate in events and maintain friendships with players in this case." (Id. ¶¶ 30-36.)

Plaintiff's arguments rest on the assumption that "Lipstick Jungle" was distributed by Defendant Time Warner Inc. (Pl.'s

9

Apr. 18, 2008 Ltr. ¶ 27.)  Plaintiff provides no support for this assumption and it appears to be incorrect.  "Lipstick Jungle" was published by Hyperion Books, and Hyperion Books is distributed by HarperCollins Publishers.  About Hyperion, http://www.hyperionbooks.com/hyperion.htm.  In turn, HarperCollins Publishers is a wholly-owned subsidiary of News Corporation.  News Corp., Annual Report (Form 10-K), at 14-15 (Sept. 1, 2005).

However, even assuming arguendo that "Lipstick Jungle" is somehow connected to Defendant Time Warner Inc., Plaintiff's allegations do not establish the appearance of impropriety required for recusal.  First, my mere attendance at a book party does not constitute an endorsement of the book as a product.[4]

Second, Plaintiff fails to specifically allege that I received a gift of skin cream at the book party (I do not recall receiving such a skin cream) and fails to specifically allege the value of such a gift.  However, assuming arguendo that I did receive such a gift, I acted properly.  Canon 5(C)(4) of the Code of Conduct for United States Judges requires that "[a] judge should not solicit or accept anything of value from anyone seeking official action from or doing business with the court . .

---

[4]Canon 7(A)(2) of the Code of Conduct for United States Judges requires that a judge not "make speeches for a political organization or candidate or publicly endorse or oppose a candidate for public office."  Canon 7 is entitled "A Judge Should Refrain From Political Activity."  My attendance at a book party for "Lipstick Jungle" was not a political activity.

10

. or from anyone whose interests may be substantially affected by the performance or nonperformance of official duties."  However, Canon 5(C)(4) permits a judicial officer to accept gifts in accordance with the "Judicial Conference gift regulations."  In turn, these regulations permit a judicial officer to accept a gift "incident to the business, profession or other separate activity of the officer . . . so long as the gift is of the type customarily provided to others in similar circumstances and is not offered or enhanced because of the judicial officer's official position."  Judicial Conference Regulations Concerning Gifts § 5(b)(7).  In reference to the skin cream, Plaintiff alleges that the women in attendance at the book party "were 'happy to accept' a 'gift' at the party."  (Pl.'s Apr. 18, 2008 Ltr. ¶ 30.)  Plaintiff thus admits that the skin cream was given to the women in attendance at the book party and was not offered to me or enhanced specifically because of my position.  Accordingly, my alleged acceptance of the skin cream conforms to the "Judicial Conference gift regulations" and does not violate Canon 5(C)(4).

Third, Plaintiff fails to identify the "players in this case" with whom I purportedly prefer to maintain my friendships.  Candace Bushnell is not a defendant in this case.  The "Lipstick Jungle" book party was hosted by Tina Brown, who is not a defendant in this case.  I did not attend a "special 'lipstick bar' and event" allegedly hosted by Defendant Saks Inc.

Therefore, Plaintiff's argument is without merit.

**III. Conclusion**

The Court finds that the arguments raised in Plaintiff's April 18, 2008 submission are without merit. The Court notes that "where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." In re Aguinda, 241 F.3d 194, 201 (2d Cir. 2001). The Court finds that recusal is not warranted in this case, and is, in fact, prohibited.

SO ORDERED.

Dated: New York, New York
April 25, 2008

_____
Kimba M. Wood
United States District Judge